IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ASHLEY BARNARD-BLACK                  :

                                      :

    v.                                :    Civil Action No. DKC 24-2337

                                      :

MARCUS JORDAN JONES, et al.           :

                                      :

**MEMORANDUM OPINION**

On August 12, 2024, Plaintiff Ashley Barnard-Black ("Plaintiff") filed a Complaint for Violation of Rights and Constitutional Issues (ECF No. 1), Motion to Proceed *in forma pauperis* (ECF No. 2), and a Request for Registration of a Foreign Custody Determination and Emergency Injunction (ECF No. 4). She names four defendants: Marcus Jordan Jones, Governor Ron DeSantis, Ashley Moody with the Office of the Attorney General, and Laura Roth, Clerk of the Court of the 7th Judicial Circuit. Plaintiff contends that a child custody order issued by the Council of Nine-Juridical Tribal Court Coosa Nation-State of North American (USA) ("Council of Nine") must be honored, that her minor child must be returned to live with her in Maryland, and that all previous orders relating to child custody must be declared null and void. She attaches to her complaint an Order purportedly issued on January 19, 2024, by the Council of Nine that provides for the return of Plaintiff's minor child. (ECF No. 1-5).

Because Plaintiff seeks to proceed *in forma pauperis*, the court must conduct an independent review of the complaint for sufficiency.  Any claim that is (i) frivolous or malicious, (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such suit, must be dismissed. See 28 U.S.C. § 1915(e)(2)(B).

The court is required to construe self-represented complaints liberally to allow the development of a potentially meritorious claims, and pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  This requirement of liberal construction does not mean, however, that the court can ignore a clear failure allege facts which support a viable claim.

Plaintiff asserts both diversity of citizenship and federal question jurisdiction as the basis for subject matter jurisdiction.  Plaintiff's complaint arises from an underlying civil child custody proceeding originating in Florida during, or prior to, 2014.  Plaintiff asserts that both she and her minor child are citizens of the United States and, in addition, are nationals "due to their membership in an aboriginal tribe" pursuant to 8 U.S.C. § 1401.  She cites 25 U.S.C. § 1911 (a provision in the Indian Child Welfare Act) as the statutory provision providing for Indian tribe jurisdiction over any child custody proceeding

involving an Indian child.  28 U.S.C. § 1362 confers jurisdiction on the district court "of all civil actions, brought by any Indian Tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."

"In 1978, Congress enacted the Indian Child Welfare Act (ICWA) out of concern that 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies.' 92 Stat. 3069, 25 U.S.C. § 1901(4)." *Haaland v. Brackeen*, 599 U.S. 255, 265 (2023).  The ICWA provides, in part, that an Indian Tribal Court has exclusive jurisdiction "over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe . . ."  25 U.S.C. § 1911. The law does not apply, however, to all types of child custody disputes.  Rather, it is limited to the proceedings delineated in the definition section, § 1903:

> For the purposes of this chapter, except as may be specifically provided otherwise, the term—
>
> (1) "child custody proceeding" shall mean and include—
>
> (i) "foster care placement" which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the

child returned upon demand, but where parental
rights have not been terminated;

(ii) "termination of parental rights" which
shall mean any action resulting in the
termination of the parent-child relationship;

(iii) "preadoptive placement" which shall mean
the temporary placement of an Indian child in
a foster home or institution after the
termination of parental rights, but prior to
or in lieu of adoptive placement; and

(iv) "adoptive placement" which shall mean the
permanent placement of an Indian child for
adoption, including any action resulting in a
final decree of adoption.

Such term or terms shall not include a
placement based upon an act which, if
committed by an adult, would be deemed a crime
or upon an award, in a divorce proceeding, of
custody to one of the parents.

25 U.S.C. § 1903. The United States Court of Appeals for the
Fourth Circuit realized that "[t]his statutory exclusion clearly
indicates that a state court may lawfully award custody of an
Indian child to a non-Indian parent in a divorce proceeding." *In
re Larch*, 872 F.2d 66, 69 (4th Cir. 1989). Here, the parents were
not married, but, as in *Leija v. Kickapoo Traditional Tribe of
Texas*, No. DR-18-CV-043-AM, 2019 WL 13081603, at *5 (W.D.Tex.,
March 27, 2019), "their custody battle is akin to divorce
proceedings," and the ICWA does not apply. The Act only applies
to foster care or adoption, and then only places exclusive
jurisdiction in the tribe if the Indian child is living within the
reservation. Plaintiff is, thus, unable to rely on the ICWA for

relief and her assertion of a viable claim under this court's federal question jurisdiction fails.

Moreover, any effort to bring a state law claim under this court's diversity jurisdiction also falls short. Federal courts generally abstain from hearing matters involving domestic relations, i.e., divorce, child custody, alimony, and child support. *See Ankenbrandt v. Richards,* 504 U.S. 689, 702 (1992). In addition, to the extent the state court has issued an adverse decision, this court cannot exercise jurisdiction over what is essentially an appeal from state court. "Under the *Rooker-Feldman*[1] [abstention] doctrine, a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Am. Reliable Ins. v. Stillwell*, 336 F. 3d 311, 316 (4th Cir. 2003) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). The *Rooker-Feldman* doctrine is jurisdictional and, as such, this court may raise it *sua sponte*. *See Jordahl v. Democratic Party of Va.,* 122 F.3d 192, 197 n.5 (4th Cir. 1997). "[T]he *Rooker-Feldman* doctrine . . . by elevating substance over form, preserves the independence of state courts as well as congressional intent that an appeal from a state court decision must proceed through that state's system of appellate review rather than inferior federal

---

[1] *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

courts." *Stillwell*, 336 F. 3d at 391.  Accordingly, Plaintiff has not and cannot state a claim within this court's diversity jurisdiction.

For these reasons, Plaintiff will be directed to show cause why this case should not be dismissed.  A separate order follows.


                                        /s/
                         _____
                         DEBORAH K. CHASANOW
                         United States District Judge